**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HALYM HWANG, | ) | |
| | ) | |
| Plaintiff, | ) | No. 24-cv-8939 |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Keri L. Holleb Hotaling |
| THE BOARD OF EDUCATION FOR | ) | |
| OAK PARK AND RIVER FOREST HIGH | ) | |
| SCHOOL DISTRICT 200, LISA | ) | |
| MAKELY, JULEE TERRETTA, and | ) | |
| OTHER INDIVIDUALS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

The motion to dismiss for failure to state a claim [Dkt. 15] filed by Defendants the

Board of Education for Oak Park and River Forest High School District 200 ("BOE"), Lisa

Makely, and Julee Terretta, is granted in part and denied in part for the reasons set forth below.

I. **BACKGROUND**

At this stage, the Court accepts as true the facts in Plaintiff's complaint, many of which are

set forth below. *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 523 (7th Cir.

2022). At all relevant times, Plaintiff was a sixteen-year-old junior at Oak Park River Forest High

School, just 4'11" tall and about 120 pounds. (Dkt. 1 ¶ 1.) She endured a "traumatic childhood" of

"physical, psychological, and emotional abuse," leaving her "extremely susceptible to further

emotional distress" and "especially untrusting of . . . adults in positions of authority." (*Id*. ¶¶ 7-9.)

She is on the autism spectrum and has post-traumatic stress disorder, general anxiety disorder, and

major depressive disorder. (*Id*. ¶ 10.) Plaintiff has "episodes" in which she "experiences tics, rapid

and repetitive muscle movements resulting in sudden body jolts or sounds." (*Id*. ¶¶ 11-12.) These

episodes could "appear" to onlookers "to be painful or otherwise dangerous," but Plaintiff's doctor

assured Plaintiff "she was under no threat of harm during" them. (*Id*. ¶ 13.) Plaintiff gave the

school's nurse, Julee Terretta, notice, verbal instructions, and doctor's notes regarding Plaintiff's

conditions, and her need for "accommodations" in the form of not intervening in her episodes. (*Id*.

¶¶ 14-15.) Plaintiff regularly met with school staff, including Terretta and the social worker, Lisa

Makely, and informed them "that being physically touched during an episode would exacerbate

her PTSD and cause immeasurable pain[,]" and no one should "make physical contact with

Plaintiff," "call a nurse," or "call emergency services (including 911)" if Plaintiff was having an

episode. (*Id*. ¶¶ 16, 23, 25, 26.) Instead, Plaintiff needed "space and time to recover." (*Id*. ¶ 24.)

On February 9, 2022, as Plaintiff was walking to class between periods, she had an episode.

(*Id*. ¶ 19.) Plaintiff chose to sit "down inside the threshold of her . . . classroom . . . quietly on the

floor" and there experienced "two tics." (*Id*. ¶¶ 22, 28, 29, 30, 31.) Someone summoned Terretta

and Makely, who, along with an unidentified School Resource Officer ("SRO"),[1] approached

Plaintiff. (*Id*. ¶¶ 28-31, 33.) Terretta and Makely touched and "patted Plaintiff on her back,

shoulders, neck, and head," although Plaintiff "pulled away . . . to avoid being touched[.]" (*Id*.

¶¶ 32, 34, 37.) Plaintiff, hoping "fresh air would alleviate the intense stress[,]" then "slow[ly] and

calm[ly]" rose and crossed the classroom toward a window. (*Id*. ¶¶ 43-44.) Without warning, an

adult, who Plaintiff believes to have been the 6'2"-tall and 230-pound SRO, "tackled [Plaintiff] to

the ground," causing her to hit her head on a table, lose consciousness, and suffer a suspected

concussion. (*Id*. ¶¶ 45-47, 53.) At least three much larger adults then restrained Plaintiff on the

floor by her legs and wrists, impeding Plaintiff's breathing. (*Id*. ¶¶ 54-56.) By then, Plaintiff

believes eight adults were present. (*Id*. ¶ 57.) Throughout these events, Plaintiff never expressed

any desire to hurt herself or others and posed no threat to adults. (*Id*. ¶¶ 58-59.)

---

[1]     Plaintiff in the Complaint refers to "defendant SRO," but there is no such named Defendant, and the term is not
defined in the Complaint. Plaintiff's brief (Dkt. 20) identifies "SRO" as a School Resource Officer.

Meanwhile, someone telephoned the police; they arrived with paramedics who restrained Plaintiff in a hospital bed, although she denied homicidal or suicidal thoughts. (*Id*. ¶¶ 61-62, 65.) Plaintiff's mother ultimately was called but did not speak with Plaintiff. (*Id*. ¶¶ 63, 64.) Plaintiff was taken to Rush Oak Park Hospital, where she was placed in hard restraints, causing her to "lose the pulse in one of her hands and being compromised on the other hand." (*Id*. ¶ 67.) Upon the eventual notification and arrival of Plaintiff's mother, the restraints were removed at her insistence. (*Id*. ¶¶ 68-69.) Makely "falsely" informed a physician that Plaintiff had suicidal thoughts, psychosis, and hallucinations, which led to Plaintiff being unwillingly placed in a psychiatric gown and transferred to a psychiatric ward. (*Id*. ¶¶ 70, 71.)

Before February 9, 2022, Plaintiff was a gifted student participating in and excelling in several scholastic activities and clubs. (*Id*. ¶ 73.) On or around March 3, 2022, apparently before Plaintiff had returned to school after the February 9, 2022 episode, Plaintiff was turned away from an afterschool scholastic bowl, and, on March 4, 2022, the Director of Student Services informed Plaintiff she could not return to school until a "re-entry meeting," which did not occur until the end of May 2022. (*Id*. ¶¶ 76-78.) Plaintiff did not receive homebound learning until May 5, 2022 and was able to pass only three of her classes that did not require her physical presence at school. (*Id*. ¶¶ 83, 84.)

In this lawsuit, Plaintiff names as Defendants the BOE, Terretta, and Makely; she dismissed all unknown defendants on November 22, 2024. (Dkt. 11.) Plaintiff brings the following claims: due process violation of her rights to exercise bodily integrity and be free from excessive force against the BOE, Makely, and Terretta (Count I, 42 U.S.C. § 1983); a Rehabilitation Act ("Rehab Act") claim against the BOE (Count II, 29 U.S.C. § 794, et seq.); violation of the Americans with Disabilities Act ("ADA") against the BOE (Count III, 42 U.S.C. § 12131, et seq.); intentional infliction of emotion al distress against the BOE, Makely, and Terretta (Count IV, state

law); and violation of the state right to education against the BOE (Count V, state law). Defendants

move to dismiss the complaint in its entirety. (Dkt. 15.)

## II.     STANDARD

A court addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)

"accept[s] as true all well-pleaded facts in the complaint and draw[s] reasonable inferences in favor

of the plaintiff." *Kap Holdings*, 55 F.4th at 523 (citing *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277

(7th Cir. 2016)). "To survive a motion to dismiss, the allegations in the complaint 'must plausibly

suggest . . . a right to relief, raising that possibility above a speculative level,' . . . and give the

defendant fair notice of what claim the plaintiff is making and what the basis for that claim is[.]"

*McCray v. Wilkie*, 966 F.3d 616, 620 (7th Cir. 2020) (citations omitted); *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This requires merely

"a short and plain statement," *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006), with just

enough "factual content" to "allow[] the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged," *Kap Holdings*, 55 F.4th at 524 (internal quotation marks and

citation omitted). "A complaint need not identify legal theories, and specifying an incorrect theory

is not a fatal error." *Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011). A motion to

dismiss may be granted, though, "if a plaintiff pleads facts which show [s]he has no claim" or "if

it appears beyond doubt that the plaintiff can prove no set of facts in support of h[er] claim which

would entitle h[er] to relief." *McCready*, 453 F.3d at 888 (citations and internal quotation marks

omitted).

## III.    DISCUSSION

Defendants move to dismiss Plaintiff's complaint for failure to state a claim on which relief

may be granted. They also assert qualified immunity bars the claims against Defendants Terretta

and Makely. The parties' briefs were of little help in analyzing the below issues.

### 1. Count I — Due Process —Bodily Integrity/Excessive Force

Plaintiff's Count I invokes 42 U.S.C. § 1983, the Fourteenth Amendment substantive due process right to bodily integrity, and her right to be free of excessive force, which is rooted in the Fourth Amendment and rendered applicable to the states by the Fourteenth Amendment. U.S. Const. amends. IV, XIV; *Manery v. Lee*, 124 F.4th 1073, 1076 (7th Cir. 2025). (Dkt. 1 at Count I.) Defendant does not address the extent to which Plaintiff simultaneously may proceed under both theories. *See McCann v. Mangialardi*, 337 F.3d 782, 786 (7th Cir. 2003) ("[A] substantive due process claim may not be maintained when a specific constitutional provision (here the Fourth Amendment) protects the right allegedly violated."); *Mendez v. City of Chi.*, No. 18-cv-6313, 2019 WL 4934698, at *6 (N.D. Ill. Oct. 7, 2019) (same); *but see Doe v. Bd. of Educ. of Chi.*, 611 F. Supp. 3d 516, 536 (N.D. Ill. 2020) (explaining "that principle . . . is not automatically applied"). Accordingly, the Court does not address that issue in its analysis of Plaintiff's claims below.

### A. Individual Defendants

### 1. Fourth Amendment

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. Defendants address the events as a potential search of Plaintiff. (Dkt. 16 at 5-6.) "A search [] violates the Fourth Amendment [] if it is unreasonable, meaning it is not 'justified at its inception' or not permissible in scope." *Cornfield by Lewis v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1320 (7th Cir. 1993) (citations omitted). "An unlawful search 'occurs when an expectation of privacy that society is prepared to consider reasonable is infringed' by some sort of examination to find something." *Doe*, 611 F. Supp. 3d at 534 (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)); *see also New Jersey v. T.L.O.*, 469 U.S. 325, 337-38 (1985) addressing search by school official). There is no suggestion that the individual defendants examined Plaintiff to find anything, and Plaintiff also does not claim she was searched.

As Plaintiff seems to intend to allege, other courts have analyzed similar fact patterns as a potential "seizure" of a student by public school officials. *See, e.g., Wallace by Wallace v. Batavia Sch. Dist. 101*, 68 F.3d 1010, 1014 (7th Cir. 1995). A person is "'seized' within the meaning of the Fourth Amendment, only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed [s]he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 552 (1980). It requires "governmental termination of freedom of movement through means intentionally applied." *Doe*, 611 F. Supp. 3d at 535 (cleaned up).

In the school context, when "seeking to maintain order and discipline," teachers are permitted to "tak[e] reasonable action[,]" which may include seizing "a student in the face of provocative or disruptive behavior." *Wallace*, 68 F.3d at 1014. "[A] teacher or administrator who seizes a student" violates the Fourth Amendment "only when the restriction of liberty is unreasonable under the circumstances then existing and apparent." *Id*. The reasonableness inquiry considers factors such as "the school context, the student's age, size, and demeanor, [the] relationship between the need for force and the amount used, the extent of the student's injury, whether the student presented a safety concern and whether the student was actively resisting." *See Price ex rel. J.K. v. Mueller-Owens*, 416 F. Supp. 3d 816, 828 (W.D. Wis. Feb. 2, 2021). "Reasonableness is a 'fact intensive argument' that is generally 'inappropriate on a motion to dismiss.'" *Moore ex rel. P.M. v. Lauer*, No. 22-cv-50354, 2023 WL 3199821, at *5 (N.D. Ill. May 2, 2023); *see also Graham v. Connor*, 490 U.S. 386, 397 (1989) ("[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the [defendants]' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.").

Neither party addresses when a seizure (or seizures) of Plaintiff may have occurred or how long any seizure lasted. The Court perceives several potential seizure events: (1) when Terretta

6

and Makely arrived and patted Plaintiff's back; (2) when the SRO tackled Plaintiff; (3) when

Plaintiff was restrained upon the floor; and (4) when Plaintiff was restrained after paramedics

arrived. The Court will address each in turn.

First, Plaintiff's allegations do not plausibly suggest she was seized when Terretta and

Makely joined her and patted her back or shoulders, the conduct Plaintiff seems chiefly to

challenge. Plaintiff specifically alleges she had chosen her spot on the floor, where she remained

of her own volition, until she chose to rise and walk across the room, which neither Terretta nor

Makely prevented. (Dkt. 1 ¶¶ 32, 34, 43-44.) These facts indicate Plaintiff felt free to leave and

thus do not indicate a seizure. Nor do the allegations otherwise suggest a Fourth Amendment

violation. *See, e.g.*, *Provost v. Howard-Suamico Sch. Dist.*, No. 21-C-430, 2021 WL 5359015, at

*5 (E.D. Wis. Nov. 17, 2021) (holding at summary judgment stage that teacher's conduct in

"quickly grabbing [a student] and then just as quickly letting go . . . while perhaps distasteful and

even tortious, did not violate [the student's] constitutional rights").[2]

Second, tackling a person may constitute a seizure, *see United States v. Wilson*, 963 F.3d

701, 703 (7th Cir. 2020) ("The [] seizure here occurred when [a police officer] . . . tackled

[suspect]."), and such a seizure of a student by school officials may be objectively unreasonable,

*see Moore*, 2023 WL 3199821, at *5, but neither Terretta nor Makely tackled Plaintiff. (*See* Dkt.

1 ¶ 45.) Terretta and Makely might in some instances "be liable for failing to intervene 'in an

imminent or ongoing constitutional violation,'" *Medina ex rel. N.M. v. Izquierdo*, 594 F. Supp. 3d

---

[2]     Defendants insist Terretta's and Makely's "actions were not unreasonable under the circumstances," because they "received the directives regarding how to handle Plaintiff's psychological episodes months *after* the complained of incident." (Dkt. 16 at 6 (citing Exs. A-B).) But the exhibits (a November 8, 2021 physician's letter, a March 20, 2021 Plan Referral, May 10, 2021 Section 504 Plan) pre-date the February 9, 2022 event; they do not incontrovertibly contradict Plaintiff's allegations that, on multiple occasions before February 9, 2022, she notified personnel of her needs during her episodes. (*See, e.g.*, Dkt. 1 ¶¶ 14-16, 22-27, 36, 99-100.) Nor would it matter because, even if the Defendants were unaware of the preferred manner for handling Plaintiff's episodes, that alone would not dictate, as a matter of law, that their actions are reasonable for Fourth Amendment purposes.

1045, 1060 (N.D. Ill. 2022), if they had "'a realistic opportunity to intervene to prevent the harm from occurring.'" *Moore*, 2023 WL 3199821, at *7. But Plaintiff alleges that the tackle was "sudden" and "without warning" (Dkt 1 ¶¶ 45-47), indicating Terretta and Makely realistically could not have prevented the SRO from tackling Plaintiff. *See Moore*, 2023 WL 3199821, at *7 (holding that allegations that school official "'immediately and physically took over the situation" and slammed student to floor without verbal warning indicated "no opportunity by which" other employees present "could have learned of and intervened against the forthcoming, out-of-the-blue actions of [the school official]").

Third, Plaintiff may have been or remained seized while on the floor after the SRO tackled her.[3] Physical restraint of a student can be objectively unreasonable. *See id.*; *Doe Child by Doe v. Stark County Cmty. Unit Sch. Dist. #100*, No. 19-1215-MMM, 2019 WL 6702538, at *5 (C.D. Ill. Dec. 9, 2019) (holding that plaintiff student's allegations that school official restrained plaintiff by placing a five-gallon bucket on the upper half of plaintiff's body, caused bruises by physically restraining him, among others, were sufficient to suggest an objectively unreasonable seizure); *Rodriguez v. City of Berwyn*, No. 16-cv-5106, 2018 WL 5994984, at *13 (N.D. Ill. Nov. 15, 2018) (finding that "pinning [plaintiff] to the ground with both knees pressed into his chest" might have been greater force than necessary and therefore potentially constituted objectively unreasonable force) (collecting cases). Plaintiff's allegations that three or more school officials held her wrists and legs to the floor are markedly less damaging than the foregoing. Nevertheless, several school officials holding a student on the floor by the wrists and ankles for a prolonged period may constitute a seizure, and the allegations suggest that Terretta or Makely might have been able to intervene to prevent it.

---

[3] No party addresses the issue of when any seizure may have ended.

Finally, Plaintiff may have been seized when paramedics or medical personnel held her. *See Bruce v. Guernsey*, 777 F.3d 872, 875 (7th Cir. 2015) ("The Fourth Amendment of the Constitution governs mental-health seizures[.]"); *Villanova v. Abrams*, 972 F.2d 792, 795 (7th Cir. 1992) ("A civil commitment is a seizure . . ..")). No paramedic or doctor is named here, and there is no suggestion that those personnel might have been state actors, but Plaintiff alleges Makely's allegedly false statements to medical personnel that Plaintiff had suicidal thoughts caused medical personnel to restrain and detain her. This plausibly suggests a seizure for which Makely may be responsible.[4] *See Tobin v. McLeod*, No. 22-cv-7080, 2023 WL 8236897, at *4-5 (N.D. Ill. Nov. 28, 2023) (holding that allegations that police awoke him by knocking on his apartment door, entered, drew their weapons, handcuffed him, and transported him to hospital "plausibly state a Fourth Amendment unreasonable seizure claim[,] and court could not "look beyond the pleadings to make a factual finding concerning probable cause based on an alleged report of suicidal ideations"); *Neiman v. Vill. of Deerfield*, No. 15-CV-4300, 2015 WL 9315543, at *3 (N.D. Ill. Dec. 22, 2015) (holding that plaintiff's claim that defendants' knowingly false statements caused officers to arrest him without probable cause sufficiently stated claim).

Accordingly, Plaintiff may—although this remains to be seen as the record develops—be able to establish that either Terretta or Makely's conduct violated her rights to be free from objectively unreasonable seizure on the two grounds set forth above. *See Medina*, 594 F. Supp. 3d 1054; *Stark Cnty*, 2019 WL 6702538, at *5; *Rodriguez*, 2018 WL 5994984, at *13. The Court will analyze qualified immunity below.

---

[4]    The Court need not here address whether Makely may be held responsible for the manner in which restraints were applied to Plaintiff's wrists by medical personnel.

### 2. Bodily Integrity

"'[A] serious physical assault'" may violate the fundamental right to bodily integrity rooted in the Due Process Clause, although "[l]ess severe forms of battery, including 'offensive touching,' do not suffice." *O'Callaghan v. Univ. of Ill. at Chi.*, No. 19-cv-6271, 2025 WL 509299, at *17 (N.D. Ill. Feb. 14, 2025) (quoting *Wudtke v. Davel*, 128 F.3d 1057, 1063 (7th Cir. 1997); *Alexander v. DeAngelo*, 329 F.3d 912, 916 (7th Cir. 2003)).

Defendants argue that Nurse Terretta and Defendant Makely's conduct of "touch[ing] Plaintiff while she experienced an episode" fails to "rise to th[e] level" of a battery that would violate Plaintiff's bodily integrity. (Dkt. 16 at 8.) Plaintiff contends that "touching Plaintiff without her consent, contrary to medical instructions . . . violat[ed] her clearly established rights." (Dkt. 20.) Plaintiff identifies, and the Court has located, no authority indicating that merely touching or patting a person who prefers not to be touched could constitute either a serious physical assault or a conscience-shocking battery under the Fourteenth Amendment, *see, e.g., Alexander*, 329 F.3d at 916 ("[M]ost batteries are too trivial to amount to deprivations of liberty.") (citations omitted). Nor is there any suggestion that holding Plaintiff to the floor by the wrist and ankles could constitute a conscience-shocking battery for which Terretta and Makely might be liable for failing to intervene to curtail. Accordingly, this claim is dismissed without prejudice.

### 3. Qualified Immunity

The individual defendants also argue that they are entitled to qualified immunity regarding Count I. (Dkt. 16 at 9-11.) Typically, a complaint will not be "dismissed under Rule 12(b)(6) on qualified immunity grounds" because such a defense "usually depends on the facts of the case." *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001). "'But when all relevant facts are presented, the court may properly dismiss a case before discovery . . . on the basis of an affirmative defense.'" *Moore v. Lauer*, No. 22-cv-50354, 2024 WL 245188, at *6 (N.D. Ill Jan. 23, 2024)

(quoting *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012)); *see also Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 916 (7th Cir. 2015) (observing that Seventh Circuit "ha[s] reversed the denial of qualified immunity at the pleading stage where appropriate[.]").

Qualified immunity shields government actors from liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Clearly established" means either that various courts have deemed "certain conduct [] a constitutional violation under facts not distinguishable in a fair way from the facts presented or the constitutional violation is "patently obvious" and "no reasonable [official] could have thought he was acting lawfully." *Reed v. Palmer*, 906 F.3d 540, 547 (7th Cir. 2018).

Defendants Terretta and Makely argue that Plaintiff alleges only a violation of her Individualized Education Plan, not a constitutional right, and that their physical contact with Plaintiff does not qualify as excessive force or violate Plaintiff's right to bodily integrity. (Dkt. 16 at 10-11.) Plaintiff protests that she alleged that "Makely and Terretta touched Plaintiff without her consent, contrary to medical instructions" and "violat[ed] of her constitutional rights under the ADA and Rehabilitation Acts." (Dkt. 20 at 6-7.) But Plaintiff did not name Makely or Terretta as defendants to her ADA or Rehabilitation Act claims, and neither allegedly was responsible for the conduct forming the basis for a potential claim under those statutes as identified below. Accordingly, it is not necessary to reach qualified immunity on those claims.

As for the federal claims against Makely and Terretta in Count I, Plaintiff identified no case law indicating that either should have known that "touch[ing] Plaintiff without her consent" or failing to follow her IEP in doing so (if that indeed conflicted with her IEP) could violate Plaintiff's Fourth Amendment right to freedom from unreasonable seizures or her right to bodily integrity, which are the only claims she levels against Terretta and Makely. Nor does Plaintiff

argue, much less point to case law indicating, that a school official in Makely or Terretta's position would have known that holding a student's wrists and ankles, failing to intervene in such a restraint, or undertaking any other conduct alleged would violate the Constitution. *See Doe*, 782 F.3d at 916 (noting that "district court correctly determined that it was not clearly established that calling off another police officer or falsely reporting to dispatch that the scene was clear violates a constitutional right of a victim of private violence" and plaintiff had "not shown that it was clearly established that any other conduct or inaction of [defendant] violated a constitutional right[,]" so, "[e]ven assuming that the complaint alleges that [defendant] violated [plaintiff's] constitutional right, the law was not clearly established such that he should have known he was violating her rights"); *Moore*, 2024 WL 245188, at *7-8 (dismissing without prejudice plaintiff's amended claim that school officials should have stopped another school official from restraining student through various means because plaintiff had not shown clearly established right or conduct "was so 'patently violative that an analogous case was unnecessary'"); *Moore*, 2023 WL 3199821, at *8 (dismissing without prejudice plaintiff's claim that two school officials failed to intervene to prevent another school official's escalating physical restraints of student because plaintiff had "not identified a 'closely analogous case' describing the duty to intervene to prevent a constitutional violation" or "advance[d] the argument that the conduct was so patently violative that guidance from the courts was not required"). Accordingly, the Court grants Defendant's motion to dismiss Count I against Terretta and Makely on qualified immunity grounds.

### B. BOE—Official Capacity/Monell Claims

For *Monell* or official capacity liability, a plaintiff must show: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Waters v. City of Chi.*, 580 F.3d

575, 581 (7th Cir. 2009) (quoting *Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007)); *see also Shields v. Ill. Dep't. of Corr.*, 746 F.3d 782, 789, 796 (7th Cir. 2014) ("A claim against an officer in his or her official capacity is the same as a claim against the entity that employs the officer, which is a *Monell* claim . . ."). Plaintiff insists her allegations of directives to school officials regarding how to handle her episodes and the officials' behaviors on February 9, 2022 could be read to demonstrate a policy or custom of deliberate indifference to her rights or a "lack of training and guidance for handling students with disabilities akin to Plaintiff's conditions" that constitute "*de facto* policies, widespread practices, and/or customs" that caused her injuries on February 9, 2022. (Dkt. 20 at 4-5.)

The Court disagrees. Given the dismissal of Count I against the individual Defendants, no *Monell* liability can be found. Even so, Plaintiff alleges no express policy that caused a constitutional deprivation when enforced or any decision by a person with final policymaking authority that caused her injuries on February 9, 2022. Nor do her allegations—which suggest only the one February 9, 2022 episode (with different school officials exhibiting varying and distinct types of conduct throughout it)—hint at a policy that caused the events on February 9, 2022. *Hutton v. City of Chi.*, No. 20-cv-3997, 2021 WL 809731, at *4 (N.D. Ill. Mar. 3, 2021). A failure to follow Plaintiff's directives or plan on February 9, 2022, when Nurse Terretta and Defendant Makely touched Plaintiff, is a *single* instance of that challenged conduct and is insufficient for *Monell* purposes without more suggesting a policy or practice of treating students in that manner or ignoring similar IEP plan directives. *See Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524-25 (7th Cir. 2023) (holding that plaintiff "failed to plausibly allege . . . a widespread practice of using excessive force to punish students with behavioral disabilities" where she alleged school administrator's involvement in challenged incident and school staff commentary about being on the same page about the incident, one other incident involving plaintiff that plaintiff merely

13

described as involving "similar aggressive force," and an irrelevant incident involving plaintiff's brother); *Johnson v. Dart*, No. 16-cv-144, 2021 WL 5083755, at *7 n.9 (N.D. Ill. Nov. 2, 2021) (rejecting plaintiff's *Monell* claim that "five Cook County employees could have caught the error . . ., and the failure of those five employees to act demonstrates a widespread practice" because "this failure stems from a single instance"); *contra Gaines v. Chi. Bd. of Educ.*, No. 19-cv-775, 2020 WL 1182767, at *3-4 (N.D. Ill. Mar. 12, 2020) (finding plaintiffs' allegations detailing other reports of similar incidents in school system and by defendants were sufficient to suggest *de facto* policy).

Without supporting citation, Plaintiff asserts she can establish a *Monell* policy or widespread practice through claimed instances of failing to honor Plaintiff's IEP in other ways. (Dkt. 20 at 6.) But Plaintiff's IEP does not mention not touching her; nor do the other alleged failings provide a pattern for *Monell* liability for the incident on February 9, 2022 Count I.[5] Any *Monell* claims against the BOE are dismissed without prejudice.

## II.    Counts II, III — Rehab Act/ADA Claims

Plaintiff alleges the BOE violated Title II of the ADA and § 504 of the Rehabilitation Act, "both of which prohibit discrimination against the disabled." *H.P. ex. rel. W.P. v. Naperville Cmty. Unit Sch. Dist. #203*, 910 F.3d 957, 960 (7th Cir. 2018) (citation omitted). *See also* 42 U.S.C. § 12132; 29 U.S.C. § 794(a). "A claim under either statute has two basic elements: (1) the plaintiff must be a qualified individual with a disability; and (2) the plaintiff must have been denied governmental benefits because of his disability." *P.F. by A.F. v. Taylor*, 914 F.3d 467, 471 (7th Cir. 2019) (citing 42 U.S.C. § 12132; 29 U.S.C. § 794(a)); *see also H.P.*, 910 F.3d at 960-61 ("This language requires the plaintiff to prove that, but for his disability, he would have been able to

---

[5]    Plaintiff alleges, for example, that her elevator pass was delayed, she did not always have access to her phone in class, was not provided preferential seating near a door or wall, and did not receive certain time extensions or accommodations for getting to or from class or completing homework or tests. (Dkt. 1 ¶¶ 93-98.)

access the services or benefits desired.") (cleaned up). A plaintiff can establish disability discrimination under the ADA and the Rehab Act in one of three ways: "by showing that '(1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people.'" *Dolan v. Twp. High Sch. Dist. No. 214*, No. 1:19-cv-3052, 2024 WL 3904672, at *3 (N.D. Ill. Aug. 21, 2024).

Defendants argue the complaint shows no "but for" causation because "[t]he Complaint makes clear that the individual Defendants interacted with Plaintiff not because she had a disability but because her tics 'appear painful.'" (Dkt. 16 at 12.) Plaintiff, though, does not bring her ADA and Rehab Act claims against the individual defendants. Moreover, Makely and Terretta touching her while she experienced her tics on February 9, 2022, does not plausibly suggest a violation of the ADA because those actions did not, even arguably, deny Plaintiff "governmental benefits because of [her] disability." *P.F.*, 914 F.3d at 471.

That said, Plaintiff alleges the BOE did not allow her to return to school or provide her with educational services following the events of February 9, 2022. These allegations permit a plausible inference that, at some point following those events, Plaintiff was ready to return to school but was not permitted to return solely because of her "episode"; those facts permit an inference of discrimination based on disability. *See Sandlin v. Switzerland Cnty. Sch. Corp.*, No. 4:08CV0047DFHWGH, 2009 WL 2563470, at *9 (S.D. Ind. Aug. 17, 2009) (addressing as potential discrimination claim student's allegations that he had medical event at school and missed days of school after school officials requested time to train staff before his return). Accordingly, the motion to dismiss is denied as to Counts II and III.

### III.    Counts IV, V — State Law Claims

#### A.    Intentional Infliction of Emotional Distress ("IIED") -- BOE, Makely, and Terretta

Defendants argue that Plaintiff has not plead the greater "specificity and detail" required for an IIED claim, but Defendants cite only one state case applying Illinois' fact pleading standard (*see* Dkt. 16 at 13 (citing *Welsh v. Commonwealth Edison Co.*, 306 Ill. App. 3d 148, 153 (1st Dist. 1999)), rather than the applicable federal notice pleading standard. *See* Fed. R. Civ. P. 8(a); *Johnson v. NCR Corp.*, No. 22 C 3061, 2023 WL 1779774, at *2 (N.D. Ill. Feb. 6, 2023) ("Illinois' more stringent fact-pleading standard does not apply in federal court.").

An IIED claim under Illinois law requires Plaintiff to "establish that '(1) the defendant's conduct was truly extreme and outrageous; (2) the defendant intended to inflict severe emotional distress (or knew that there was at least a high probability that its conduct would cause severe emotional distress); and (3) the defendant's conduct did in fact cause severe emotional distress.'" *Andreasik v. Hunt, Gather LLC*, No. 23-cv-02755, 2024 WL 1142082, at *6 (N.D. Ill. Mar. 15, 2024) (quoting *Richards v. United States Steel*, 869 F.3d 557, 566 (7th Cir. 2017)). Although "excessive force and other mistreatment" may meet the "extreme and outrageous" element, *Cosby v. Rodriquez*, 711 F. Supp. 3d 983, 1000-01 (N.D. Ill. 2024), "not every battery will satisfy" it; that element "is met only when the force used is very extreme or causes very severe physical injury." *Dominguez v. Park City*, No. 19-cv-5327, 2023 WL 2664393, at *9 (N.D. Ill. Mar. 28, 2023). Here, as set forth above, Terretta and Makely are not alleged to have used excessive force against Plaintiff; further, the allegations do not suggest "truly extreme and outrageous conduct" by them or the BOE. Count IV is dismissed without prejudice.

16

**B.  State Right to Education -- BOE**

The BOE finally argues that the Illinois School Code does not provide Plaintiff with a private right of action for monetary damages and attorneys' fees. (Dkt. 16 at 15.) Without challenging Defendants' argument that any claims for monetary damages and attorneys fees would be barred, Plaintiff defends her claim on the ground that she is seeking equitable relief. (Dkt. 20 at 10.) Plaintiff, though, does not seek any identifiable equitable relief in her Complaint or response to Defendants' motion, and her allegations do not suggest she is a current student. No available equitable relief is apparent on Plaintiff's allegations. Accordingly, the Court dismisses Count V without prejudice.

**IV.  CONCLUSION**

Defendants' motion to dismiss the complaint [Dkt. 15] is granted in part and denied in part. Counts I, IV, and V and Defendants Terretta and Makely are dismissed without prejudice. Counts II and III remain operative. Defendant BOE shall answer the complaint by 9/16/2025. The parties are directed to confer no later than 10/7/2025 to discuss the nature and basis of their claims and defenses and the possibilities for a prompt settlement or resolution of the case, and they shall also discuss deadlines for any Rule 26(a)(1) disclosures that have not already been exchanged and a proposed discovery plan. Plaintiff is responsible for initiating such a conference, and all lead counsel for all parties must participate. In lieu of an initial status hearing, the parties shall file a joint written initial status report and proposed discovery plan by 10/14/2025. Failure or refusal to participate in such a conference or to cooperate in the preparation of the written report may constitute a basis for sanctions.

ENTERED: August 26, 2025

_____

Hon. Keri L. Holleb Hotaling
United States Magistrate Judge